# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1477 | **DATE** | 10/9/2002 |
| **CASE TITLE** | Polish American Congress, et al vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Both Chicago's Rule 12(c) motion and its Rule 56 motion are denied. And as stated in the preceding section, the latter denial is without prejudice to the possible renewal of such a motion in the future. A status hearing is set for 9 a.m. October 18, 2002. (27-1, 27-2, 28-1, 28-2, 29-1, 29-2)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 1 0 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | C.N. docketing deputy initials | 32 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 10/9/2002 date mailed notice | |
| SN | courtroom deputy's initials | | SN mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION
```

POLISH AMERICAN CONGRESS, et al., )
                                  )
              Plaintiffs,         )
                                  )
    v.                            )   No.  02 C 1477
                                  )
CITY OF CHICAGO, et al.,          )
                                  )
              Defendants.         )

**DOCKETED**

**OCT 1 0 2002**

## MEMORANDUM OPINION AND ORDER

Polish American Congress and seven individuals initially brought this action for declaratory and injunctive relief against (1) City of Chicago, (2) Richard F. Mell in his official capacity as Chairman of the Chicago City Council's Committee on Committees, Rules and Ethics, (3) Chicago's Board of Election Commissioners and (4) Langdon D. Neal, in his official capacity as Chairman of that Board (for convenience, all defendants are collectively called "Chicago," treated as a singular noun). Plaintiffs have alleged that Chicago's ward redistricting map adopted in December 2001 violates their rights under the First,[1] Fourteenth and Fifteenth Amendments and under the Voting Rights Act of 1965 ("Act," 42 U.S.C. §§1973 to 1973p).[2]

---

[1] As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to that underlying Bill of Rights provision (which of course imposes limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody such Bill of Rights guarantees).

[2] Citations to the Act will take the form "Section --," omitting the Title 42 reference.

32

This Court's July 24, 2002 memorandum opinion and order ("Opinion," 211 F.Supp. 2d 1098)[3] dismissed most claims in the Complaint,[4] leaving potentially viable only the claim by the Polish American Congress and the four plaintiffs residing in Chicago's 30th ward (Frank Golinski, Robert Kocabinski, Mary Taylor-Hart and current 30th Ward Alderman Michael Wojcik) (collectively "Plaintiffs"[5]) that the new map violates the Fourteenth Amendment's Equal Protection Clause. Now Chicago has moved to reject that claim as well, alternatively seeking a judgment on the pleadings under Fed. R. Civ. P. ("Rule") 12(c) or a summary judgment pursuant to Rule 56.[6] For the reasons stated in this memorandum opinion and order, both of Chicago's motions are denied (though the denial of the Rule 56 motion is without prejudice).

---

[3] Citations to the Opinion will take the form "Opinion at --," referring to the F.Supp.2d page number without constantly repeating the volume number.

[4] All claims brought by the three original plaintiffs residing outside of the 30th Ward (Dolores Bajda, Anne Janiga and Virginia Wielgos) were dismissed for lack of standing (Opinion at 1104-06). Claims brought by the remaining plaintiffs under the Act and under the First and Fifteenth Amendments were dismissed for failure to state a claim (id. at 1107-08).

[5] This usage differs from the broader scope of the same term employed in the Opinion, simply because the listed parties are the only survivors at this point.

[6] For those purposes this Court has excused the parties from complying with the often onerous requirements of this District Court's LR 56.1.

## Judgment on the Pleadings

Courts review Rule 12(c) motions under the same standard as motions brought under Rule 12(b)(6) (GATX Leasing Corp. v. Nat'l Union Fire Ins. Co., 64 F.3d 1112, 1114 (7th Cir. 1995)): Judgment on the pleadings in defendant's favor will not be granted unless defendant establishes beyond doubt that plaintiff cannot prove any set of facts that would support the claim for relief and that there are no material issues of fact to be resolved (Northern Ind. Gun & Outdoor Shows, Inc. v. South Bend, 163 F.3d 449, 452 (7th Cir.1998)). To that end the court must accept as true all facts alleged by plaintiff and must draw all reasonable inferences from the pleadings in plaintiff's favor (id.; Gillman v. Burlington N. R.R., 878 F.2d 1020, 1022 (7th Cir.1989)). But because such inferences must be reasonable, they cannot be brought into play if they are contrary to the clear and unambiguous words or actions of the parties (Northern Ind. Gun & Outdoor Shows, 163 F.3d at 452, explaining that the court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim").

As with a Rule 12(b)(6) motion, the aptly named motion for judgment on the pleadings restricts the parties and the court to the contents of the pleadings themselves (id.).[7] But to defeat

---

[7] What follows in the Background section is therefore drawn from the Complaint (cited simply "¶ ") and, as to affirmative defenses, from the Answer (cited Ans. ¶ -"). Hence the recital

3

such a motion a plaintiff may supplement the complaint with an affidavit or brief with additional facts, so long as those facts are consistent with the allegations in the complaint (Help at Home, Inc. v. Medical Capital, L.L.C., 260 F.3d 748, 752-53 (7th Cir. 2001)).

Background

Although Opinion at 1101-02 recited the facts alleged in the Complaint in some detail, the key facts are repeated here for convenience. Pursuant to Illinois law (65 ILCS 20/21-22), in the wake of the year 2000 census the Chicago City Council began to consider plans to redistrict Chicago's 50 aldermanic wards in late 2001. On November 28 it announced a proposed redistricting map that incorporated suggestions made by members of the Council's African-American and Latino caucuses (¶¶22-23). That proposed map did not take into account census information about voting age population or ancestry, for those figures were not yet available (¶24). At a December 14 public hearing three different citizen groups--including a Polish ethnic coalition--presented alternate redistricting plans, none of which was given serious consideration (¶25). On December 19 the City Council adopted new ward redistricting ordinances based on the November 28 map (¶26).

---

omits "Plaintiffs allege" or any like usage (without of course making or implying any factual findings by this Court). This opinion cites to Chicago's initial memorandum as "C. Mem. --," to its reply memorandum as "C. R.Mem. --" and to Plaintiffs' responsive memorandum as "P. Mem. --."

4

Polish American Congress is a not-for-profit corporation that represents the interests of Polish-Americans by promoting civic, educational and cultural programs (¶5). All four remaining individual plaintiffs[8] are registered voters who currently reside in the 30th Ward (¶¶6-12). Three of the four are of Polish ethnicity (id.). All Plaintiffs claim to represent the Polish community of interest for the purposes of this action (¶13).

This action focuses on northwest Chicago's 30th Ward, which under the redistricting ordinance surrounds the 31st Ward on three sides and at points is as narrow as two city blocks (¶¶28, 32). Plaintiffs oppose the new redistricting map as it relates to the 30th Ward because the new ward boundaries splinter the Polish ethnic community of interest, previously contained in two wards, into four different wards (¶¶28, 31). According to Plaintiffs, Chicago designed the new ward boundaries for the sole purpose of making the 30th Ward majority-Latino (¶34).

That focus on race injures the Polish community of interest by minimizing the representation of that community's needs on the City Council (id.). Other harms inflicted on the Polish ethnic

---

[8] One of the plaintiffs, Michael Wojcik ("Wojcik"), the current Alderman for the 30th Ward, sued in both his personal and official capacities (¶12). As Opinion at 1103 n.9 has held, however, Wojcik's standing arises not from his official capacity as Alderman but from his individual status as a 30th Ward resident.

5

community by redistricting include (1) the removal of certain churches and businesses from the 30th Ward, (2) potential cuts to certain ward services (including Polish language translation) and (3) the difficulty Wojcik will have in being re-elected and thereby representing the community's interests in the City Council (¶¶37-40).[9] Plaintiffs have produced an alternative map establishing boundaries for the 30th Ward (¶41), and they now request declaratory and injunctive relief.

Plaintiffs' Map and Equal Protection

Chicago's Rule 12(c) motion, based on the first affirmative defense raised in the Answer, argues that even if Plaintiffs were successful in establishing the material facts alleged in the Complaint, the relief they request would itself constitute a violation of the Equal Protection Clause (C. Mem. 2). Turning the Plaintiffs' legal theory around by using it to attack the allegations in their own Complaint, Chicago contends that the redistricting map that Plaintiffs set forth as their proposed remedy for the 30th Ward was itself impermissibly drawn, using Polish ethnicity as the predominant consideration.[10]

---

[9] According to a newspaper article submitted by Chicago as C. R.Mem. Ex. 2, Wojcik announced some two weeks ago that he will not stand for reelection in the next aldermanic election. That decision has no effect on the current rulings in this opinion.

[10] "Ethnicity," no less than "race," is a suspect criterion for governmental decision making (see, e.g., Builders Ass'n of Greater Chicago v. County of Cook, 256 F.3d 642, 643-44 (7th Cir. 2001)). For the sake of simplicity, this opinion uses the terms

As Opinion at 1103 found, under United States v. Hays, 515 U.S. 737, 744-45 (1995) Plaintiffs' Polish ethnicity was not relevant to their standing to challenge the 30th Ward redistricting--instead such standing stemmed solely from their status as resident voters in the allegedly racially gerrymandered ward. Thus the current Rule 12(c) motion puts a question intimated by Opinion at 1103 n.8 but not reached on the motion to dismiss: Whether by including (and indeed by stressing) the Complaint's allegations that framed their claim in terms of the Polish ethnic community, Plaintiffs have inadvertently admitted that Polish ethnicity was the predominant consideration behind the proposed redistricting relief that they request.

Chicago correctly points out that a plaintiff can plead himself, herself or itself out of court by alleging facts in a complaint that make clear a lack of any entitlement to relief (Head v. Chicago Sch. Reform Bd. of Trs., 225 F.3d 794, 802 (7th Cir. 2000). Moreover, "[a]llegations in a complaint are binding admissions, and admissions can of course admit the admitter to the exit from the federal courthouse" (Jackson v. Marion County, 66 F.3d 151, 153-54 (7th Cir. 1995)(citations omitted).

This Court agrees in the abstract with Chicago (and with the centuries-old and modern doctrines of moral philosophy on which it seeks to draw, see C. Mem. 6 n.2) that if Plaintiffs' request

---

interchangeably.

for relief to remedy an assertedly unconstitutional race-based redistricting plan is itself unconstitutional under the same principle, their claim may not stand. But that begs the question whether Plaintiffs' requested relief in fact violates the Equal Protection Clause. Because Chicago has chosen to raise the issue in the manner it has, the Rule 12(c) standard frames the issue in terms of whether Plaintiffs can prove any set of facts consistent with the Complaint's allegations that would support a reasonable inference that their proposed redistricting map was not drawn in violation of that Clause. Hence this opinion turns to the Plaintiffs' allegations when viewed through the lens of the Supreme Court's equal protection jurisprudence.

Under the Equal Protection Clause no facially neutral law "warrants strict scrutiny," so as to call for its narrow tailoring to a compelling state interest, unless "it can be proved that the law was motivated by a racial purpose or object, or...is unexplainable on grounds other than race" (Hunt v. Cromartie, 526 U.S. 541, 546 (1999)(citations and internal quotation marks omitted)). In the redistricting context, "strict scrutiny applies if race was the 'predominant factor' motivating the...districting decision" (id. at 547). To meet that "predominant factor" test, it must be "show[n]--using direct or circumstantial evidence, or a combination of both--that the [map-maker] subordinated traditional race-neutral redistricting

8

principles, including but not limited to compactness, contiguity, and respect for political subdivisions or communities defined by actual shared interests, to racial considerations" (id. at 547)(citations omitted)).

If either the mere consideration or even the purposeful use of race in redistricting were sufficient to warrant strict scrutiny under the Equal Protection Clause,[11] Plaintiffs' claim would be doomed. As Chicago rightly recounts, the bulk of the Complaint's allegations are framed in terms of the adopted map's negative impact on the Polish ethnic community. For example, it is said that the redistricting was done "without regard for the integrity of the Polish ethnic community" (¶33), thereby "minimizing representation of the needs of the Polish ethnic community" (¶34). Further, Plaintiffs complain that most of the adverse effects of the new map would be predominantly borne by

---

[11] Two Justices have proposed just that, arguing that all governmental racial classifications must be strictly scrutinized and that race-based districting is no exception (Bush v. Vera, 517 U.S. 952, 1000 (1996)(Thomas and Scalia, JJ., concurring). But the majority of the Supreme Court disagrees. In the most recent incarnation of Shaw v. Reno, 509 U.S. 630 (1993), the Court expressly said that "race must not simply have been a motivation for the drawing of a majority-minority district but the 'predominant factor' motivating the...districting decision" Easley v. Cromartie, 532 U.S. 234, 242 (2001)(emphasis in original; citations and internal quotation marks omitted)). Speaking before those post-Shaw cases were decided, our Court of Appeals has also opined that "awareness of race cannot be banished from the redistricting process or thought to establish, without more, a denial of equal protection" (Barnett v. Daley, 32 F.3d 1196, 1199 (7th Cir. 1994)).

9

the "Polish ethnic community." According to the Complaint, the map has disproportionately minimized the "voting potential of the Polish ethnic community of interest", diminished the voting power and representation of "Polish ethnic business districts", and significantly impaired the ability of the "Polish ethnic community of interest" to elect a "Polish alderman" (¶40). Plaintiffs' relentless focus on the Polish ethnic community throughout their Complaint leaves no doubt that increasing Polish voting power in the 30th Ward was surely a substantial motivation for preparing their proposed redistricting map.

But such purposeful use of ethnicity in redistricting is not enough in itself to trigger heightened scrutiny. Instead ethnicity must be shown to have eclipsed traditional districting factors (see Justice O'Connor's plurality opinion in Bush, 517 U.S. at 962, explaining that the neglect of traditional districting criteria is a necessary but not sufficient element of such a claim). In fact, as Miller v. Johnson, 515 U.S. 900, 919 (1995)(internal quotation marks omitted) has put it, "compliance with traditional districting principles such as compactness, contiguity, and respect for political subdivisions may well suffice to refute a claim of racial gerrymandering."[12]

---

[12] As in this case, Miller, id. at 917-18 presented the court there with considerable direct evidence that the challenged redistricting lines were drawn with a race-based motivation: to create majority-minority districts. But unlike this case (at least at the present stage), in Miller there was also both

10

Plaintiffs' responsive memorandum argues just that. Casting their Complaint in a markedly different light from that presented on the earlier motion to dismiss, Plaintiffs now assert that their proposed map was drawn to protect race-neutral "communities of interest"--something quite different from the "Polish ethnic community of interest" alone. While they admit to requesting a redistricting remedy that takes the Polish-American community into consideration, Plaintiffs deny that Polish ethnicity was the predominant factor used to draw their map. Plaintiffs rather claim that their map was drawn according to traditional districting principles that were not subordinated to the admitted consideration of Polish ethnicity.

To be sure, that reading of the Complaint is advanced for the first time as a part of Plaintiffs' opposition to the instant motion. But although that revised stance may have resulted from Plaintiffs' better-informed realization of where the skeleton of potential unconstitutionality may be buried, it is not at all inconsistent with the Complaint.[13] From the beginning Complaint

---

circumstantial and additional direct evidence that those racial objectives predominated over all other redistricting criteria (id. at 919).

[13] If the newly-offered emphasis were instead inconsistent with the Complaint, Plaintiffs' responsive memorandum would constitute an impermissible attempt to amend rather than to construe their Complaint, so that it could not be considered by this Court (Perkins v. Silverstein, 939 F.2d 463, 470 n.6 (7th Cir. 1991); Thomas v. Nachtrieb, 888 F.2d 1202, 1205 (7th Cir. 1989)).

11

¶41 (citations to exhibits omitted) has described Plaintiffs' requested relief in this fashion:

> Plaintiffs have produced an alternative map which better conforms to the standards of city, state, and federal law. Unlike the new ward redistricting map, it has been drawn in conformity with traditional race-neutral principles--population equality, compactness, contiguity, and the integrity of existing communities of interest. Moreover, it more closely adheres to the former boundaries of the 1990 ward map.

It is quite true that in view of its already-described heavy emphasis on the Polish-American community, the Complaint--if it were to be viewed in a light disfavoring Plaintiffs--could support the inference that they have proposed a redistricting with the predominant purpose of increasing Polish-American voting power. But as already stated (more than once), judgment on the pleadings is appropriate only when, with the Complaint being taken as truth and with reasonable inferences being drawn for rather than against Plaintiffs, no set of facts consistent with the allegations can be proved that would allow Plaintiffs to remain in court.

Plaintiffs' memorandum urges such an inference: that ethnicity did not predominate over race-neutral factors in drafting their proposed map. It asserts that Plaintiffs are seeking to protect the integrity of race-neutral existing communities of interest. It is true, as Chicago's reply brief points out, that much of the evidence proffered to support such a race-neutral motivation might be questioned in view of the

12

Complaint's factual presentation. For example, the business centers and community service providers that Plaintiffs now label as ethnically neutral are substantially the same components of the community of interest that Plaintiffs' earlier arguments had characterized along Polish ethnic lines. And Chicago successfully torpedoes Plaintiffs' attempts to demonstrate a neutral purpose in having excluded some highly Polish areas from their proposed 30th Ward (see C. R.Mem. 4). Not only is that claim unsupported by data, but its reasoning is flawed (id.)

All of this, however, does not undercut the obvious point that a "community of interest" is an imprecise concept, so that it is particularly difficult to define where it may overlap with cultural or social interests that are substantially correlated to race and ethnicity. Clearly a community of interest is not formed where the only common thread to the "community" is skin color or the origin of one's ancestors (see Miller, 515 U.S. at 919-20). But as Justice Ginsberg's dissent in Miller points out, "ethnicity itself can tie people together" and "is a significant force in political life" (id. at 944). Here Plaintiffs' references to "communities of interest" might perhaps be no better than a euphemism for the Polish ethnic community, but for Rule 12(c) purposes there is at least a possibility that the grouping is legitimately based on a common thread of relevant interests, rather than impermissible stereotyping at odds with

equal protection mandates. And that is enough for the Complaint
(and this action) to survive a Rule 12(c) attack.

Even if that were not the case, Plaintiffs also point to the
shape of their proposed 30th Ward as evidence that their
redistricting plan did not subordinate traditional districting
criteria to ethnicity. First they state, and even a cursory
visual inspection confirms, that their proposed construction of
the 30th Ward (P. Ex. II) is geographically more compact than
either the existing ward or the new one adopted by Chicago (P.
Mem. 4). It is true that such geographical compactness may still
be revealed as suspect in relation to the area's ethnic
composition and density (see Miller, 515 U.S. at 917). But here,
where no demographic data has been made available by the parties
about the allocation of the Polish population (as compared with
the total non-Hispanic white population) among the proposed
wards, no conclusions about Plaintiffs' motivations may
legitimately be drawn one way or the other from the ward's
compactness alone. Even so, if the use of race as a predominant
factor can lead to districts that are not compact, the relatively
compact ward presented by Plaintiffs could logically raise an
inference that race has not eclipsed traditional districting
principles. And because all such inferences must be drawn in
Plaintiffs' favor, that too counsels defeat of the Rule 12(c)
motion.

Plaintiffs further stress the shape of their proposed ward as evidence that its lines were drawn in an effort to adhere to the boundaries of the former ward. Adherence to established boundary lines, like the drawing of districts to protect incumbent officeholders, may or may not be a legitimate redistricting objective, depending in part on how the lines were drawn originally (see <u>Chen v. City of Houston</u>, 206 F.3d 502 (5th Cir. 2000); <u>Ketchum v. Byrne</u>, 740 F.2d 1398, 1408 (7th Cir. 1984), discussing incumbency-driven motives). But once again such an unanswered question about the legitimacy of Plaintiffs' motivation must, at this stage, be resolved in Plaintiffs' favor.

It should be apparent that this opinion must not be read as an ultimate holding that Polish ethnicity was <u>not</u> the predominant factor in Plaintiffs' proposed redistricting map. It would be troublesome (to say the least) if the current submission by Plaintiffs and their counsel were merely an attempt to escape the prospect of self-destruction that this Court had identified in Opinion at 1103 n.8. But as stated earlier, Plaintiffs' submission is rooted in part of the original allegations in the Complaint, viewed (as is required at this time) from a reasonable pro-Plaintiffs perspective. Because the possibility thus remains that Plaintiffs' consideration of Polish ethnicity, while clearly a motivating force, did not eclipse other traditional districting criteria in violation of the Equal Protection Clause, Chicago's

Rule 12(c) motion must be and is denied.

## Motion for Summary Judgment

Much of what has been said as to the undeveloped record on the factual issue of Plaintiffs' motivation in drawing their map applies to Chicago's redistricting motivations as well. On that score Chicago's motion for summary judgment asserts that its drawing of the lines that *it* adopted for the 30th Ward were not predominantly based on race, instead reflecting a host of redistricting concerns (including the needs to reduce ward overpopulation and to accommodate the conflicting desires of Chicago's current aldermen). Plaintiffs, calling attention to the contours of the new 30th Ward, dispute that and urge that they have not yet had the opportunity for sufficient discovery in this matter. This Court agrees that a grant of summary judgment would be premature at this time.

Rule 56(f) is tailored for situations such as this. It provides a safeguard against the improvident grant of summary judgment where the nonmovant demonstrates in good faith an inability to respond with the necessary factual material absent further discovery. Although the language of Rule 56(f) contemplates that such a presentation is to be made by way of affidavit, "[a] court may disregard a failure to formally comply with Rule 56(f) if the opposing party's request for a continuance clearly sets out the justification for the continuance" (Pfiel v.

Rogers, 757 F.2d 850, 856 (7th Cir. 1985); see also Theotokatos v. Sara Lee Personal Prods., 971 F. Supp. 332, 343-45 (N.D. Ill. 1997)).

Here P. Mem. 8 more than adequately identifies an appropriate basis for Rule 56(f) relief. As Opinion at 1106 observed, the irregular shape of the new 30th Ward shows that it underwent significant alterations through the redistricting process. It has become clear that Chicago's motivation in drafting the redistricting map presents a material (and perhaps complex) factual issue, and the parties are as yet in the initial stages of discovery. Moreover, as P. Mem. 8 says, the additional evidence that bears on the issue whether race was or was not the predominant factor in Chicago's redistricting decision rests primarily (if not entirely) in Chicago's possession.[14]

Because such discovery is clearly called for here, Chicago's motion for summary judgment must be and is denied without prejudice. If in Chicago's view it were to prove appropriate to renew its Rule 56 motion at some future date, it will not be required to reinvent the wheel by tendering a totally self-contained motion and supporting materials. Instead it may,

---

[14] Chicago seeks to block off Plaintiffs' contention by tendering a Supplemental Declaration of Michelle Murphy. Quite apart from Plaintiffs' effort to strike that document (P. Mem. 8-9), Ms. Murphy's statement cannot even arguably foreclose the presentation of additional relevant evidence, though her statement may ultimately be part of the total evidentiary mix.

17

if it so chooses, incorporate by reference part or all of its current submissions, supplementing them to the extent it finds necessary.

## Conclusion

As indicated at the outset, both Chicago's Rule 12(c) motion and its Rule 56 motion are denied. And as stated in the preceding section, the latter denial is without prejudice to the possible renewal of such a motion in the future.

One final comment may be in order. It had been this Court's hope to render a final decision in this action far enough in advance of the filing deadline for nominating petitions for Chicago's 2003 aldermanic election to eliminate the uncertainty as to the makeup of the 30th Ward that has been posed by this lawsuit. That hope had been based on the original prognostication by counsel for all parties that the case was primarily (if not exclusively) law-driven rather than fact-driven.

As the Opinion and this sequel have demonstrated, however, counsel's prediction has not been borne out. At this point it is clear that the 1993 election must proceed on the basis of Chicago's existing map, so that Plaintiffs would face the additional hurdle of having to overcome an accomplished electoral outcome even if they were ultimately to prevail on the merits. In that light, it seems appropriate to schedule an early status

18

hearing to discuss the future course of this litigation, and such a hearing is set for 9 a.m. October 18, 2002.

/s/ Milton I. Shadur
Milton I. Shadur
Senior United States District Judge

Date: October 9, 2002